Mary Jo O'Neill, AZ Bar No. 005924
Syreeta Tyrell, AZ Bar No. 034273
**EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION**
**Phoenix District Office**
3300 N. Central Ave., Suite 690
Phoenix, Arizona 85012
Telephone: (602) 661-0067
Fax: (602) 640-5009
Email:  mary.oneill@eeoc.gov
        syreeta.tyrell@eeoc.gov

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| v. | (JURY TRIAL DEMANDED) |
| Christian Care Management Inc., dba Christian Care Companies/Fellowship Square, | |
| Defendant. | |

## **NATURE OF THE ACTION**

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the

Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex,

female, and to provide appropriate relief to Charging Party Terilynn Keo and a class of

other female employees who were adversely affected by such practices during their

employment with Defendant Christian Care Management, Inc., dba Christian Care Companies/Fellowship Square (hereinafter "CCMI"). As alleged with greater particularity below, the Equal Employment Opportunity Commission alleges that CCMI subjected Keo and other women at CCMI's Main Street Mesa Location to sexual harassment that was pervasive and/or severe.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Arizona.

## PARTIES

3.      The EEOC is an agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by § 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4.      CCMI operates senior living and/or retirement communities.

5.      At all relevant times, CCMI has been an Arizona corporation and has continuously been doing business in the State of Arizona.

6.      At all relevant times, CCMI has continuously been an employer engaged in an industry affecting commerce under §§ 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

7.     At all relevant times, CCMI has continuously had at least 15 employees.

8.     On or around the time of the sexual harassment alleged herein CCMI had approximately 750 employees across the State of Arizona.

9.     CCMI has senior living community locations in the following Arizona cities: Phoenix, Mesa, Cottonwood, Surprise and Tucson.

10.     These locations operate under the name Fellowship Square.

11.     CCMI has two Fellowship Square locations in Mesa, Arizona—a senior living community in historic downtown Mesa and another senior living community located at 6945 East Main Street ("MSM Location").

12.     CCMI is headquartered in Phoenix, Arizona at 2400 W. Dunlap Ave, Ste 250, Phoenix, AZ 85021.

## ADMINISTRATIVE PROCEDURES

13.     More than thirty days prior to the institution of this lawsuit, Keo filed a charge with the Commission alleging violations of Title VII by CCMI.

14.     The EEOC provided CCMI with notice of Keo's charge on September 14, 2021.

15.     The EEOC investigated the allegations Keo made in her charge.

16.     After the investigation, the EEOC issued a Letter of Determination to CCMI on June 20, 2024, finding reasonable cause to believe that CCMI violated Title VII.

17.    The EEOC's Letter of Determination invited CCMI to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

18.    Attempts at informal conciliation were unsuccessful.

19.    On September 18, 2024, the EEOC issued CCMI a Notice of Failure of Conciliation advising CCMI that the EEOC was unable to secure from CCMI a conciliation agreement acceptable to the EEOC.

20.    All administrative prerequisites or conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

21.    Since at least 2020, CCMI has engaged in unlawful employment practices based on sex in violation of Section 703(a) of Title VII, 42 U.S.C. 2000(e)-2(a) by creating a sexually hostile work environment for Keo and other female employees at CCMI's MSM Location in Mesa, Arizona.

22.    At all times relevant, CCMI operated the senior living facility at the MSM Location.

23.    CCMI's MSM Location does business under the name Fellowship Square.

24.    Elmer Parsons became a resident at the MSM Location on January 31, 2019.

25.    Parsons was 90 years old at the time.

26.    On April 9, 2021, Parsons sexually harassed and physically assaulted a CCMI transportation driver, Terilynn Keo.

27.     CCMI's transportation drivers were responsible for transporting CCMI residents between the facility and various locations for various activities, such as medical appointments.

28.     In April 2020, in addition to Keo, CCMI employed at least one other transportation driver at the time, who was a male.

29.     As a transportation driver for CCMI, Keo drove all of the various company-used vehicles, ranging from a small passenger car to a wheelchair-accessible van.

30.     As a transportation driver for CCMI, Keo was directly supervised by Michael Long.

31.     Michael Long was supervised by Elizabeth Avalos.

32.     At all times relevant, Avalos supervised Long in addition to serving as the manager in the dining hall and managing other departments at the MSM Location.

33.     As a transportation driver, Keo was told that if an incident occurred while transporting residents, she needed to contact her supervisor, including on matters where it may be necessary to contact the police.

34.     CCMI told Keo that once she contacted her supervisor about an incident, her supervisor, Long, and his supervisor, Avalos, would then decide whether to contact the police.

35.     On April 9, 2021, Keo was the CCMI driver responsible for transporting Parsons from the MSM Location to another location for a medical appointment.

36.     Keo had not transported Parsons before April 9, 2021.

37.     By April 9, 2021, Parsons had previously sexually harassed other female employees at the MSM Location.

38.     Keo had no knowledge of Parsons' prior history of sexually harassing female employees when she picked him up on April 9, 2021.

39.     Neither Long, Avalos, nor any other CCMI supervisor or manager told Keo about Parsons' history of sexually harassing female employees.

40.     Despite knowing Parsons' history of sexual harassing female employees, CCMI did not assign any other employee to accompany Keo while she was transporting Parsons.

41.     Despite knowing Parsons' history of sexual harassing female employees, CCMI did not share this information with Keo or do anything to ensure her safety.

42.     For example, CCMI did not caution Keo to require that Parsons sit in the back seat.

43.     Nor did CCMI tell Keo to transport Parsons in one of the larger vehicles and require that he sit in the seat farthest from the driver.

44.     On April 9, 2021, Keo was transporting Parsons in a small four-seat passenger car.

45.     The drive to Parsons' medical appointment was roughly 15-20 minutes.

46.     Throughout the 15-20-minute drive, Parsons made sexually explicit, inappropriate and unwelcome comments to Keo, including but not limited to the following:

a.    Parsons told Keo that he wanted her "to get on all fours and suck [his] dick";

b.    Parsons also told Keo that he wanted to squeeze his dick and "cum" all over her;

c.    Parsons told Keo about threesomes he had with his wife and said that he wanted to have threesomes with Keo and two named housekeepers;

d.    Parsons told Keo that she was making him hot and hotter and that he wanted her to pick him up after his appointment so he could finish what he started.

47.    Parsons also sexually assaulted Keo as she drove.

48.    In the midst of his sexually explicit verbal onslaught toward Keo, Parsons reached his hand over and squeezed Keo's breast.

49.    Parsons also forced his left hand between Keo's legs, trying to grope her vagina.

50.    As Parsons physically assaulted her, Keo repeatedly pushed his hand away and told him to stop, yelling at him, "no, no, no."

51.    By the time Keo arrived at the location of the medical appointment, Parsons' penis was erect and protruding from his pants.

52.    After Parsons exited the vehicle, Keo drove away and immediately called her supervisor, Michael Long.

53. Keo was very upset at the time and insisted that Long would have to be responsible for getting Parsons picked up after his medical appointment.

54. Keo then returned to the MSM Location.

55. Long picked up Parsons from his medical appointment.

56. Later in the day, Keo met with Long and fully described Parsons' conduct.

57. Long gave Keo an incident report form to complete.

58. Long told Keo that in the future she would not have to transport Parsons alone and that the company would report the matter to the police.

59. That same day, April 9, 2021, Keo completed and turned in the incident report form to CCMI.

60. Keo's April 9, 2021 written incident report included a detailed description of Parsons' sexual assault and sexually harassing conduct toward Keo.

61. On April 13, 2021, CCMI conducted a mental examination of Parsons to assess whether his mental faculties were intact to render him fully conscious and aware of what he was doing.

62. The mental exam CCMI conducted concluded that Parsons had tested in "normal" range.

63. Parsons did not suffer from any mental illness or disease that impaired his ability to understand what he was doing when he harassed CCMI's female employees.

64. After obtaining the mental exam results, CCMI called the Mesa Police Department on April 13, 2021, reporting that Parsons had sexually assaulted Keo.

- 8 -

65.     The Mesa Police Department interviewed Keo on April 19 and May 11, 2021.

66.     On April 22, 2021, CCMI issued Parsons a 30-day notice to vacate the premises, citing "Repeated Lewd Comments and Two Alleged Sexual Assaults on Staff."

67.     Parsons moved out of the MSM Location on May 20, 2021.

68.     As a result of the assault on Keo, CCMI's Executive Director, Jon Scott Williams ("Williams"), interviewed Parsons.

69.     From his interview with Parsons, Williams concluded that Parsons was a "predator".

70.     Prior to the assault on Keo, Williams was not aware of six other women who had made written complaints to CCMI, including supervisors and managers, about inappropriate sexual comments and conduct by Parsons.

71.     Indeed, even before becoming a resident at the MSM Location Parsons had at least one prior incident of making inappropriate sexual comments at a different living facility.

72.     In 2011, a woman alleged that Parsons had made an inappropriate comment to her about having oral sex.

73.     The woman who reported the incident was a resident at the facility where Parsons was residing at the time.

74.     When CCMI admitted Parsons as a resident at the MSM Location, CCMI knew or should have known about Parsons' prior harassing conduct at another facility where he previously resided.

75.     Beginning in at least 2020, Parsons also directed inappropriate sexual comments and conduct toward numerous CCMI's female employees at the MSM Location.

76.     During the time Parsons lived at the MSM Location he also engaged in inappropriate sexual comments and conduct toward female residents at the facility.

77.     Parsons' comments to women at the MSM Location, beginning in at least 2020, were often sexually explicit and vulgar, including, but not limited to the following:

        a.     Parsons told female employees details about his alleged sex life;

        b.     Parsons probed female employees about oral sex and/or their sex lives;

        c.     Parsons told female employees that he pays for oral sex; and

        d.     Parsons quizzed female employees about whether they did "69"—a sex position.

78.     Parsons told female employees about sexual acts he wanted to perform on them.

79.     Parsons also sexually propositioned CCMI's female employees to engage in sexual acts with him.

80.     Parsons' inappropriate sexual comments and conduct toward CCMI's female employees were not limited to a particular employee, department, place within the MSM Location, or job title.

81.     Beginning from at least 2020, Parsons frequently and persistently approached women at CCMI and sexually harassed, sexually propositioned, or made

inappropriate sexual comments to them, including to at least several female employees, wherever they were in his vicinity.

      a.     Parsons cornered at least one female housekeeper in an elevator and tried to touch her.

      b.     Parsons crept up on this same woman on at least one other occasion.

      c.     Parsons walked up to another female housekeeper as she worked in the hallway and began to make crude and vulgar sexual comments to her.

      d.     Parsons probed a different housekeeper about sexual acts as she worked in his apartment at the MSM Location.

      e.     Parsons sexually propositioned at least one female employee working as a dishwasher at the MSM Location.

      f.     Parsons made vulgar and explicit sexual remarks or sexual propositioning to several female waitresses working in the dining hall at the MSM Location.

82. Between November 2020 and February 2021, at least six female employees at the MSM Location complained in writing to CCMI about Parsons' inappropriate sexual comments and conduct, including all of the following:

83. On November 24, 2020, Employee #1, a housekeeper at the MSM Location, contacted the Housekeeping Manager, Lisa Bracken, and security over the radio to report that Parsons subjected her to verbal sexual harassment.

a.    Employee # 1 reported that as she was in the hallway preparing to clean a different resident's room when Parsons approached her and commented on her figure and asked if he could get on his knees inside her pants.

b.    Employee # 1 reported that she backed away, but then Parsons put his mouth beside her to ask if she liked what he was saying to her.

c.    Employee #1 then backed into the apartment she was scheduled to clean and contacted Bracken and security.

d.    Employee #1 also submitted a formal incident report about Parsons' inappropriate sexual conduct to CCMI the same day.

e.    Based on information and belief, Employee # 1 thereafter actively tried to avoid Parsons at work.

f.    To the extent CCMI took any remedial measures in response to Employee #1's complaint in November 2020, any such measures did not stop Parsons from sexually harassing other female employees.

g.    Employee # 1 was never informed by CCMI as to what, if anything, the company did to investigate her complaint of sexual harassment.

h.    Employee # 1 was never informed by CCMI as to what, if anything, the company did to stop the sexual harassment she had reported.

i.    Based upon information and belief, CCMI never investigated any complaint of sexual harassment made by Employee # 1.

84.     On February 2, 2021, Employee #2, a server at the MSM Location, reported to Elizabeth Avalos—the dining room manager at the time—that Parsons had made inappropriate sexual comments to her.

    a.    On January 25, 2021, Parsons called Employee #2, to his dining table and made inappropriate sexual comments to her.

    b.    Parsons asked Employee #2 sexual questions, including whether she had ever had intercourse or ever heard of "69".

    c.    Parsons' comments made Employee #2 uncomfortable, so she told him she needed to serve another table and left him alone.

    d.    Parsons directed inappropriate sexual conduct towards Employee #2 on more than one occasion that her superior(s) knew about.

    e.    Based on information and belief, Employee # 2 also actively tried to avoid Parsons at work.

    f.    To the extent CCMI took any remedial measures in response to Employee #2's complaint, made on February 2, 2021, any such measures did not stop Parsons from sexually harassing other female employees.

    g.    Employee # 2 was never informed by CCMI as to what, if anything, the company did to investigate her complaint of sexual harassment.

    h.    Employee # 2 was never informed by CCMI as to what, if anything, the company did to stop the sexual harassment she had reported.

i.    Based upon information and belief, CCMI never investigated any complaint of sexual harassment made by Employee # 2.

85.    On January 26, 2021, Employee #3, another housekeeper at the MSM Location, reported to Housekeeping Manager Lisa Bracken that Parsons made inappropriate sexual comments.

a.    Employee # 3 reported that as she was cleaning Parsons' apartment on January 26, 2021, Parsons asked her if she liked oral sex.

b.    Employee #3 ignored Parsons and Parsons responded to her silence by yelling at her asking "You know what that is right?"

c.    Employee #3 told Parsons she did not want to talk and Parsons responded telling her that he would pay for oral sex.

d.    Employee #3 then packed up and left and reported Parsons to Bracken.

e.    To the extent CCMI took any remedial measures in response to Employee #3's complaint in January 2021, any such measures did not stop Parsons from sexually harassing other female employees.

f.    Indeed, when Employee #3 complained to Bracken about Parsons' inappropriate sexual conduct, Bracken instructed Employee #3 to file an incident report with CCMI.

g.    Employee #3 submitted an incident report to CCMI's human resources department and/or to CCMI's Executive Director, Williams.

h.    Although Bracken was Employee #3's supervisor, Bracken was never informed by CCMI as to what, if any, investigation was conducted regarding Employee #3's complaint.

i.    Although Bracken was Employee #3's supervisor, Bracken was never informed by CCMI as to what, if any, remedial steps were taken to stop the sexual harassment reported by Employee #3.

j.    Employee #3 was never informed by CCMI as to what, if anything, the company did to investigate her complaint of sexual harassment.

k.    Employee #3 was never informed by CCMI as to what, if anything, the company did to stop the sexual harassment she had reported.

l.    Based on information and belief, Employee #3 made multiple complaints to CCMI reporting Parsons' inappropriate sexual comments and conduct towards her.

m.    Based upon information and belief, CCMI failed to investigate the multiple complaints made by Employee #3, reporting inappropriate sexual comments and conduct by Parsons.

86.    On February 2, 2021, Employee #4, a server at the MSM Location, reported to Avalos that Parsons made inappropriate sexual comments to her.

a.    Employee #4's February 2021 complaint reported sexual harassment by Parsons that occurred in January 2021.

b.    Employee #4 was only 20 years old at the time.

c.    Employee #4 reported to CCMI that Parsons asked her if she had ever done 69.

d.    Employee #4 additionally reported to CCMI that Parsons asked her to speak to him in her sexy voice.

e.    Parsons made Employee #4 uncomfortable and she walked away from him.

f.    Parsons made inappropriate sexual comments to Employee #4 on multiple occasions.

g.    Parsons would also look at Employee #4 and other female servers "up and down" in a sexual manner which made Employee #4 especially concerned.

h.    Although Employee #4 tried to avoid Parsons in the dining hall, she and other female servers still had to walk past his table in the dining hall.

i.    Employee #4 resorted to tying clothing around her waist so Parsons would not stare at her body.

j.    Employee #4 and other female employees even contemplated not going to work to avoid Parsons.

k.    Employee #4 expressed the seriousness of her concern about Parsons to her direct supervisor Melissa Arcos.

l.    Employee #4 was so concerned about Parsons' sexual conduct towards her, she told CCMI that she did not want to serve him anymore.

m.    However, even after Parsons no longer ate in the dining hall, Employee #4 and other female employees had to take meals to his apartment.

n.    Employee #4 would leave the meals outside Parsons' door and run, afraid to have any interaction with Parsons.

o.    To the extent CCMI took any remedial measures in response to Employee #4's complaint in February 2021 or any other complaint she made, any such measures did not stop Parsons from sexually harassing other female employees.

p.    Employee #4 was never informed by CCMI as to what, if anything, the company did to investigate any complaint of sexual harassment she made.

q.    Employee #4 was never informed by CCMI as to what, if anything, the company did to stop the sexual harassment she had reported.

r.    Based upon information and belief, CCMI never investigated any complaint of sexual harassment made by Employee #4.

87.    On February 2, 2021, Employee #5, another server at the MSM Location also reported to Avalos that Parsons made inappropriate sexual comments to her.

a.    Employee #5's February 2021 complaint reported sexual harassment by Parsons that occurred in January 2021.

b.    Employee #5 reported that Parsons had commented that she had a very sexy voice and asked for her name.

c.    Parsons' conduct towards Employee #5 made her uncomfortable.

d.      Employee #5 was so uncomfortable she told CCMI that she no longer wanted to serve or talk to Parsons.

e.      To the extent CCMI took any remedial measures in response to Employee #5's complaint in February 2021, any such measures did not stop Parsons from sexually harassing other female employees.

f.      Employee #5 was never informed by CCMI as to what, if anything, the company did to investigate her complaint of sexual harassment.

g.      Employee #5 was never informed by CCMI as to what, if anything, the company did to stop the sexual harassment she had reported.

h.      Based upon information and belief, CCMI never investigated any complaint of sexual harassment made by Employee #5.

88.     On February 2, 2021, Employee #6, another server at the MSM Location reported to CCMI that Parsons had made explicit inappropriate sexual comments to her on two separate occasions.

a.      Employee # 6 reported to CCMI that one day as she was serving Parsons, Parsons started telling her about a girl who used to work at the MSM Location who did sexual favors for Parson on her days off.

b.      Employee # 6 reported that Parsons went on to describe in detail the things he and that woman would do intimately.

c.      Based on information and belief, Parsons had paid that "girl" to perform oral sex on him.

- 18 -

d.     Employee # 6 reported that Parsons told her that the woman was too skinny for him and that he was looking for someone thicker, like Employee #6.

e.     Parsons proceeded to tell Employee #6 that he was a sensual man and that she would enjoy being intimate with him.

f.     Parsons then asked Employee #6 about the sexual things she liked to do.

g.     Employee # 6 did not respond as she was in shock about what was happening to her.

h.     Parsons then propositioned Employee #6 to come over to his apartment on her days off, to which Employee #6 repeatedly told him no, and Parsons left.

i.     Employee # 6 reported that the next time she served Parsons, he resumed "his very aggressive and vulgar sexual comments towards [her]".

j.     Employee # 6 recalled Parsons telling her that he wanted to put his tongue on her body and lick her all over and that she would like it.

k.     Employee # 6 responded telling Parsons that she did not want that and eventually walked away because he kept insisting.

l.     To the extent CCMI took any remedial measures in response to Employee #6's complaint in February 2021, any such measures did not stop Parsons from sexually harassing other female employees.

m.    Employee #6 was never informed by CCMI as to what, if anything, the company did to investigate her complaint of sexual harassment.

n.    Employee #6 was never informed by CCMI as to what, if anything, the company did to stop the sexual harassment she had reported.

o.    Based upon information and belief, CCMI never investigated any complaint of sexual harassment made by Employee #6.

89.    At all times relevant, Bracken was a manager in the housekeeping department at the MSM Location.

90.    Based on information and belief, other housekeepers reported to Bracken and/or CCMI inappropriate sexual conduct by Parsons towards them.

91.    At all times relevant, in addition to being a manager for the dining hall, Avalos was also the manager of other departments at the MSM Location.

92.    Based on information and belief, other employees reported to Avalos and/or CCMI inappropriate sexual conduct by Parsons.

93.    CCMI was also informed that Parsons had engaged in similar inappropriate sexual conduct toward female residents at the MSM Location.

94.    By at latest February 2, 2021, Parsons' sexual harassment of women at CCMI, including female employees, was so open, notorious, and frequent that CCMI knew or should have known about it.

95.    CCMI did not take reasonable care to prevent or correct promptly Parsons' sexual harassment of female employees at the MSM Location.

96.    CCMI's actions in response to Parsons' sexual harassment were ineffective to *end* Parsons' sexual harassment of female employees at the MSM Location.

97.    CCMI's actions in response to Parsons' sexual harassment of women at CCMI were ineffective to *deter* future harassment of female employees at CCMI.

### FIRST CLAIM FOR RELIEF
### Sexual Harassment/Hostile Work Environment
### 42 U.S.C. § 2000e-2(a)

98.    The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

99.    Since at least November 2020 and likely going back to January 2019, CCMI has engaged in unlawful employment practices in violation of §§ 703(a), 42 U.S.C. § 2000e-2(a)(1), by subjecting Keo and other female employees to a hostile work environment based on sex.

100.    During the relevant time period, CCMI's client, Parsons, engaged in a series of inappropriate sexual comments and conduct, including physical assault, towards various CCMI female employees.

101.    Defendant CCMI further contributed to the sexually hostile work environment at the MSM facility by failing to prevent Parsons' continued sexual harassment, and failing to warn the MSM staff about Parsons' persistent sexual harassment of female employees.

102.    The totality of the circumstances, including all of the various individual incidents of sexual harassment and assault as well as CCMI's failure to adequately

respond or act to prevent such conduct, constitute a single unlawful practice of hostile work environment.

103.    CCMI subjected Keo and other women employed at the MSM Location to sexual harassment that was severe and/or pervasive.

104.    The inappropriate sexual comments and harassing and abusive conduct described above were unwelcome to Keo and other female employees.

105.    The sexual harassment of female employees at the MSM Location was known to CCMI, including to CCMI supervisors and managers at the MSM Location.

106.    Parsons sexual harassment of women, including female employees, at the MSM Location was open, notorious and widely known among employees, including CCMI supervisors and managers, at the MSM Location.

107.    Female employees reported Parsons' sexual harassment to CCMI, including but not limited to, CCMI supervisors and managers.

108.    Keo reported Parsons' sexual assault to CCMI, including to her supervisor Michael Long.

109.    CCMI knew or should have known of Parsons' sexual harassment of female employees because of the complaints made to CCMI by at least six female employees about Parsons' conduct.

110.    Before Parsons sexually harassed and physically assaulted Keo on April 9, 2021, CCMI knew or should have known about Parsons' repeated sexual harassment of female employees, which conduct was frequent, open, and notorious.

111.    Before Parsons sexually harassed and physically assaulted Keo on April 9, CCMI failed to prevent Parsons' continued sexual harassment of female employees at the MSM Location.

112.    After Parsons assaulted Keo on April 9, 2021, CCMI continued to fail to take appropriate steps to prevent or remedy Parsons' sexual harassment of female employees at the MSM Location.

113.    CCMI ratified or acquiesced in Parsons' sexual harassment of its female employees by failing to take immediate and effective corrective actions that would end and deter Parsons' harassment.

114.    The effect of the practices complained of in the foregoing paragraphs was to deprive Keo and other female employees of equal employment opportunities and otherwise adversely altered the terms and conditions of employment for female employees.

115.    The unlawful employment practices complained of in the foregoing paragraphs were intentional.

116.    The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of Keo and other female employees.

## **PRAYER FOR RELIEF**

Wherefore, the EEOC respectfully requests that this Court:

A.     Grant a permanent injunction enjoining CCMI, its officers, agents, servants, employees, successors, attorneys and all persons in active concert or participation with it, from engaging in any employment practice that discriminates on the basis of sex.

B.     Order CCMI to institute and carry out policies, practices, and programs that provide equal employment opportunities for all persons regardless of sex in order to eradicate the effects of CCMI's past and present unlawful employment practices.

C.     Order CCMI to make Keo and other female employees whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in the paragraphs above, in amounts to be determined at trial.

D.     Order CCMI to pay Keo and other female employees punitive damages because CCMI acted with the knowledge that, at minimum, there was a perceived risk that their actions violated federal law, in amounts to be determined at trial.

E.     Grant such further injunctive, equitable, and legal relief otherwise provided by Title VII and/or as the Court deems necessary and proper in the public interest.

F.     Award the EEOC its costs in bringing this action.

## JURY TRIAL DEMANDED

The EEOC requests a jury trial on all questions of fact raised by its Complaint.

RESPECTFULLY SUBMITTED this 30th day of September, 2024.

MARY JO O'NEILL
Regional Attorney

1

2

3    */s/Syreeta Tyrell*
     Syreeta Tyrell
4    Trial Attorney

5    EQUAL EMPLOYMENT
     OPPORTUNITY COMMISSION
6    Phoenix District Office
     3300 N. Central Ave., Suite 690
7    Phoenix, AZ 85012
     syreeta.tyrell@eeoc.gov
8
     Attorneys for Plaintiff
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28