**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission,<br><br>    Plaintiff,<br><br>v.<br><br>Christian Care Management Incorporated,<br><br>    Defendant. | No. CV-24-02620-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Plaintiff Equal Employment Opportunity Commission's ("EEOC") Motion for Leave to Amend the Case Management Order ("CMO") (Doc. 29) and to Amend the Amended Complaint (Doc. 39). (Doc. 65). For the reasons discussed below, EEOC's motion is granted.

## BACKGROUND

EEOC alleges that Chrisitan Care Management, Inc. ("CCMI") has engaged in unlawful employment practices based on sex, in violation of Title VII, 42 U.S.C. § 2000(e)-2(a), by creating a sexually hostile work environment in one of its senior living communities since "at least 2020." (Doc. 39 at 2-4, 21-23). Central to EEOC's hostile work environment claim are the actions of Elmer Parsons—a male resident of the senior community—who "engaged in a series of inappropriate sexual comments and conduct, including physical assault, towards various CCMI female employees." (*Id.* at 4, 21). EEOC alleges that CCMI "fail[ed] to adequately respond or act to prevent such conduct." (*Id.* at 22). In allegedly doing so, "CCMI subjected" its female employees "to sexual

harassment that was severe and/or pervasive." (*Id.*).

CCMI's employee Terilynn Keo triggered EEOC's investigation by filing a charge against the company, alleging Title VII violations related to sexual harassment and assault by Parsons towards Keo herself and other female employees. (Doc. 39 at 3-21; Doc. 41 at 2; Doc. 67-1 at 2-3). In September 2021, EEOC gave CCMI notice of the charge. (Doc. 39 at 3; Doc. 41 at 2). The investigation produced detailed allegations regarding Parsons's assault and harassment of Keo. (Doc. 39 at 6-8). It further produced allegations from multiple female employees throughout CCMI's organization and the senior living community that Parsons "frequently and persistently" (1) made "sexually explicit and vulgar" comments; (2) "propositioned . . . female employees to engage in sexual acts with him"; and (3) made female employees physically uncomfortable by "corner[ing]" or getting close to them. (*Id.* at 10-20). EEOC concluded that "CCMI knew or should have known of Parsons' sexual harassment of female employees because of the complaints made to CCMI by at least six female employees about Parsons' conduct." (*Id.* at 22).

By June 20, 2024, EEOC determined that there was "reasonable cause to believe [CCMI] subjected [Keo] and other aggrieved individuals to sexual harassment in violation of Title VII." (Doc. 67-1 at 7; Doc. 90-10). Attempts at informal conciliation by the parties, which continued into September 2024, were ultimately unsuccessful. (Doc. 39 at 4; Doc. 41 at 3). On September 30, 2024, EEOC filed the instant suit. (Doc. 1).

When discovery began in November 2024, EEOC served CCMI with its First Set of Interrogatories, which requested, among other items, a list of CCMI's employees and contact information during the relevant period. (Doc. 65-2 at 5-6). After several disputes over CCMI's response to this interrogatory, CCMI produced a "useable list" of employee information on February 12, 2025, identifying 671 individuals, 498 of whom were women (the "February List").[1] (Doc. 65 at 2-3; Doc. 67 at 4). With this list, EEOC repeatedly

---

[1] During EEOC's investigation, CCMI provided a list of employees, but did so in a format that cut-off employees' phone numbers. (Doc. 90-11). Though the parties debate that list's usefulness, EEOC did not request additional information from CCMI during its investigation (*see* Doc. 67 at 8; Doc. 90 at 6-7), and the parties agree that the list CCMI provided in February 2025 was "useable." (Doc. 65 at 2-3; Doc. 67 at 4).

attempted to notify potential aggrieved individuals of the litigation and "conducted interviews to determine whether the person was an" aggrieved individual. (Doc. 65 at 2-3; Doc. 67 at 4).

On March 29, 2025, after consultation with the parties, the Court granted EEOC an extension for its disclosure of all aggrieved individuals—setting a new deadline of May 30, 2025. (Doc. 47; Doc. 65 at 2). EEOC's interviews with potential aggrieved individuals began in late April 2025 and continued through the end of May 2025. (Doc. 65 at 3). During these interviews, EEOC learned for the first time that other female employees of CCMI "had been subjected to sexual harassment by residents other than Parsons." (*Id.* at 3).

On May 23, 2025, when EEOC served CCMI with its Fourth Supplemental Disclosure, it disclosed six additional aggrieved individuals—three of whom had been harassed by residents *other than* Parsons. (*Id.* at 3-4; Doc. 65-3 at 20-26; Doc. 67 at 4). EEOC identified these new harassers, who were also residents in the senior living community, by providing only their first names: "James" and "Eugene." (Doc. 67 at 4). The new aggrieved individual alleged that James intentionally and "regularly answered the door naked when housekeeping was scheduled to clean his room" and that Eugene "inappropriately touched at least one of the female employees and also regularly made sexual comments with . . . Parsons and laughed at Parsons' inappropriate sexual comments." (Doc. 65 at 3). James's conduct "was reported to CCMI management at least three times" by the two aggrieved individuals he harassed. (*Id.*; Doc. 90 at 4-5).

CCMI had not disclosed these reports against other harassers, despite EEOC's specific requests for such information. (Doc. 90 at 3-5). During EEOC's investigation, it requested "all information, including electronic documents, regarding any allegations of sex discrimination, harassment, retaliation, and/or any other unfair treatment due to sex made by any employee, formal or informal, during the relevant time period." (Doc. 90-2 at 2). In response, CCMI "provid[ed] an unlabeled, and unindexed stack of 827 pages of hard-copy documents, of which 84 pages were complaints about . . . Parsons." (Doc. 90 at

3).  The documents contained no information about harassment by James or Eugene.  (*Id.*).

In March 2025, EEOC served CCMI with its Second Set of Interrogatories and Second Set of Requests for Production, asking CCMI to

> Describe all complaints and/or reports (verbal or written and formal or informal) of sex discrimination, sexual or inappropriate comments, inappropriate sexual conduct, and/or sexual harassment, made against any of Defendant's residents or employees, and alleged to have occurred or received by Defendant during the relevant time period. Without limitation, your description should: (a) identify the complainant; (b) state the date of the complaint and/or report; (c) state the date of the alleged wrongdoing; (d) provide a summary of the factual allegations in the complaint; (e) identify the alleged perpetrator(s) (f) state whether Defendant investigated the complaint and who conducted the investigation.

(Doc. 90-4 at 9-10).  EEOC further asked CCMI to produce any related communications.  (Doc. 65-4 at 9; Doc. 90-5 at 10).  CCMI did not disclose any information or produce any documents related to the complaints against James or Eugene.  (Doc. 90-7 at 9).

On June 18, 2025, after EEOC served its Fourth Supplemental Disclosure identifying the aggrieved individuals and alleged harassers, CCMI's counsel stated in an email to EEOC that "[t]here were no other complaints of sexual harassment at [the senior living community] during the relevant time period."  (Doc. 90-6 at 2).

Though it still has not moved to do so, on July 10, 2025—the day of settlement discussions between the parties (Doc. 60)—CCMI told EEOC that it intended to ask the Court to exclude the allegations against James.[2]  (Doc. 65 at 4).  On August 20, 2025, four months after the amended pleadings deadline, EEOC filed its Motion to Amend.  (Doc. 29 at 1; Doc. 65).  The parties continued discovery until the Court granted a stay in this matter on October 1, 2025, due to a lapse in appropriations for EEOC.  (Doc. 97).  Certain discovery deadlines established in the CMO (Doc. 29) were modified on November 18, 2025, when the Court lifted the stay (Doc. 101 at 1), and the parties resumed discovery, pending the Court's decision on this motion.

---

[2] According to EEOC, CCMI has not expressed "an intent to object to" the inclusion of the aggrieved individual who alleged harassment against Eugene, because the woman was also harassed by Parsons.  (Doc. 90 at 3 n.1).

**DISCUSSION**

## I.    Legal Standard

Under Federal Rule of Civil Procedure 16(b)(4), a "scheduling order may be modified only for good cause and with the judge's consent."  Once the deadline imposed by a scheduling order has lapsed, the person seeking leave to amend must demonstrate "good cause." *Johnson v. Mammoth Recreation, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992); Fed. R. Civ. P. 16(b)(4).  Good cause exists when a deadline "cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson*, 975 F.2d at 609 (citing Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment)).  "[T]he focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.*  But if the party has not been "diligent, the inquiry should end." *Id.*  For instance, the good cause standard typically will not be met where the party seeking to modify the scheduling order has been aware of the facts and theories supporting amendment since the inception of the action. *See United States v. Dang*, 488 F.3d 1135, 1142-43 (9th Cir. 2007).

Similarly, where a party does not file a motion within the deadline set by the court, the party must "satisfy the more stringent 'good cause' showing required under Rule 16." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006) (quoting Fed. R. Civ. P. 16(b)(4)).  In this context, the good cause inquiry focuses on the moving party's reasons for seeking modification; but the inquiry will end if the moving party was not diligent. *Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1277 (9th Cir. 2023).  This standard is distinct from Rule 15(a)'s "liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party." *Johnson*, 975 F.2d at 609.

But, once the movant establishes good cause, *id.* at 608, Rule 15 provides that leave to amend shall be freely given when "justice so requires."  Fed. R. Civ. P. 15(a).  "The court considers five factors in assessing the propriety of leave to amend—[1] bad faith, [2] undue delay, [3] prejudice to the opposing party, [4] futility of amendment, and [5] whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colls.*,

655 F.3d 984, 995 (9th Cir. 2011). While leave to amend lies within "the sound discretion of the trial court," this Circuit has instructed that Rule 15's policy favoring amendment "should be applied with extreme liberality." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987). The party opposing amendment bears the burden of establishing prejudice or one of the other permissible reasons for denying a motion to amend. *Id.* at 187.

## II.    Analysis

### A.    Good Cause

EEOC asserts that it has good cause to amend the CMO to allow it to file a Second Amended Complaint so that the two aggrieved individuals harassed by James can "participate in this litigation and potentially obtain relief for the harm they claim to have experienced." (Doc. 65 at 5, 11). It further argues that it "could not have filed this motion by the March 4, 2025 deadline for amendment of pleadings," as it did not know of James's harassment until April or May of 2025. (*Id.* at 5). CCMI, however, claims that EEOC failed to act with diligence in seeking the amendment, and thus, should be denied leave to amend under Rule 16. (Doc. 67 at 4-12).

This dispute is reducible to three issues. The first two issues concern whether EEOC was diligent in discovering the evidence of harassment by other perpetrators (1) when it failed to pursue a complete list of CCMI employees to investigate aggrieved individuals harassed by others despite CCMI's failure to disclose any such harassment and (2) when it contacted and interviewed potential aggrieved individuals after receiving the February List.

First, CCMI claims that EEOC could not have acted diligently in "attempt[ing] to identify" additional aggrieved individuals "that it had nearly four years to find" after Keo's charge was filed. (Doc. 67 at 7). Though CCMI is correct that the Amended Complaint focuses on the harassment by Parsons and CCMI's response to his conduct, CCMI failed to disclose *any* reports of harassment by others during the investigation, despite its knowledge of such information and EEOC's specific request for it. Only once EEOC was able to conduct interview of potential aggrieved individuals did it discover that EEOC had

received reports of sexual harassment by other residents.  While EEOC could have sought more information from CCMI during its investigation despite CCMI's withholding of its knowledge of other reports, EEOC is not required to identify every potential aggrieved individual before filing suit.  *Cf. Arizona ex rel. Horne v. Geo Group, Inc.*, 816 F.3d 1189, 1200 (9th Cir. 2016) ("If the EEOC and the Division were required to pursue individual conciliation on behalf of every aggrieved employee, they would be effectively barred from seeking relief on behalf of any unnamed class members they had yet to identify when they filed their suit.").

Second, when EEOC finally received the February List—months after CCMI's responses to the initial interrogatories were due—EEOC worked to notify and identify aggrieved individuals from a list of hundreds of female employees.  (Doc. 65 at 5; Doc. 65-2 at 5-6).  And less than three months after receiving the February List, EEOC had interviewed and identified the additional aggrieved individuals at issue here.  (Doc. 65 at 5).  Considering CCMI's delayed compliance with discovery requests, EEOC's prompt investigation and disclosure of the additional aggrieved individuals was diligent.

The third issue concerns whether EEOC failed to act diligently by filing this motion on August 20, 2025, after learning of the harassment by other perpetrators by the end of May 2025.  Though approximately four months passed between EEOC's discovery of the new evidence, courts have allowed amendment under Rule 16(b) despite delays of the same or greater duration.  *See, e.g.*, *Club Fairbanks Ranch, LLC*, 475 F. Supp. 3d 1099, 1102 (S.D. Cal. 2020) (finding that a party was diligent despite a delay of eight months because the party "remain[ed] active in attempting to obtain new information" and "consistently attempt[ed] to resolve the issue by meeting and conferring with Defendant").  Here, EEOC and CCMI continued ongoing discovery and were engaging in settlement talks during the period between the interviews of aggrieved individuals and EEOC filing its motion.  (*See* Docs. 58-64).  Indeed, on the day that the parties met for settlement discussions—July 10, 2025—CCMI informed EEOC that it would seek to exclude the women harassed by James from the lawsuit.  (Doc. 60; Doc. 65 at 4).  Five days after attempting to confer with CCMI

- 7 -

on August 15, 2025, EEOC filed its motion. (Doc. 65 at 5).

Under these circumstances, EEOC has demonstrated diligence and good cause to amend the scheduling order, including, but not limited to, the deadline for filing amended pleadings.

## B. Leave to Amend

CCMI argues that, even if there is good cause to amend the scheduling order, granting EEOC leave to amend its Amended Complaint would cause undue delay, prejudice, and would be futile.[3] (Doc. 67 at 7-12). As established above, EEOC was diligent, and CCMI does not argue that granting leave to amend would cause undue delay in this litigation moving forward. Further, as discussed below, CCMI's arguments regarding prejudice and futility—which rely on the scope of Title VII as it relates to the proposed Second Amended Complaint and EEOC's investigation—provide no basis for the Court to deny EEOC leave to amend.

## 1. Relevant Legal Standards Under Title VII

Under Title VII, an employer cannot "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). This includes sexual harassment, which "is a form of sex discrimination." *Swenson v. Potter*, 271 F.3d 1184, 1191 (9th Cir. 2001). "[S]exual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature," are forms of sexual harassment. *Ellison v. Brady*, 924 F.2d 875 (9th Cir. 1991). By protecting the "terms, conditions, or privileges of employment," Title VII prohibits "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)). It follows that, "[b]y tolerating sexual harassment against its employees, the employer is deemed to have adversely changed the terms of their employment in violation of Title VII." *Swenson*, 271 F.3d at 1191.

---

[3] CCMI does not make arguments regarding the other factors used to assess leave to amend. (*See* Doc. 67 at 7-12).

To establish that a hostile work environment exists, a plaintiff must show conduct that was subjectively and objectively "sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment." *Id.* (quoting *Meritor*, 477 U.S. at 67); *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995). Courts must consider all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. Unlike claims for discrete acts, claims alleging a hostile work environment are based on repeated conduct—i.e., "the cumulative effect of individual acts" which can occur over a series of days or years, even if the underlying acts may not be independently actionable. *Morgan*, 546 U.S. at 115 (citing *Harris*, 510 U.S. at 21). This cumulative effect may constitute a single unlawful employment practice. *Id.* at 117-18.

After demonstrating that a hostile work environment exists, a plaintiff must still prove that the employer can be held liable for the existence of that environment. *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 966 (9th Cir. 2002) (first citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 789 (1998); and then *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 871-75 (9th Cir. 2001)). "An employer is responsible for its own actions or omissions," such as a negligent response to the discriminatory conduct of others when it has notice of such conduct. *Swenson*, 271 F.3d at 1191-92 & n.6 (citing *Ellerth*, 524 U.S. at 759). In such cases, the plaintiff bears the burden of establishing that the employer failed to take reasonable, prompt, and corrective action despite having a duty to do so. *Swinton v. Potomac Corp.*, 270 F.3d 794, 803 (9th Cir. 2001). An employer's duty includes responding in a way "reasonably calculated to end the harassment." *Ellison*, 924 F.2d at 882 (quotation marks omitted).

### 2. Prejudice & Futility

Though Keo's charge against CCMI only included allegations regarding Parsons's conduct towards her and other female employees (Doc. 67-1 at 2-3), EEOC's investigation,

the original Complaint, and the Amended Complaint all reflect EEOC's concern with whether CCMI's responses to sexual harassment complaints were violative of Title VII as a single unlawful employment practice. (Doc. 1 at 21-23; Doc. 39 at 21-23; Doc. 67-1 at 7; Doc. 90-2 at 2; Doc. 90-10). And even without express reference to other harassers, the relevant considerations for a hostile work environment claim involve the cumulative effect of the employer's responses to complaints of sexual harassment. Given the nature of such claims, CCMI has failed to show that it would be prejudiced or that amendment would be futile if the Court grants EEOC's motion.

First, CCMI maintains that it would be unduly prejudiced by any amendment "because it did not have notice of any alleged harassment by anyone other than Parsons until May 23, 2025," when EEOC provided its Fourth Supplemental Disclosure. (Doc. 67 at 2). As an initial matter, CCMI cannot claim that it was prejudiced by lack of notice when its own failure to provide EEOC with reports of other sexual harassment contributed to such allegations being left out of the investigation, conciliation failure, and earlier stages of this litigation.

Further, CCMI's conduct—not Parsons's—is the basis for CCMI's potential liability. While Parsons's conduct led to the charge that initiated this suit, "a single charge of discrimination may be sufficient to put an employer on notice that additional people may be subject to the same unlawful employment practice." *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1203 (9th Cir. 2016) (citing *Paige v. California*, 102 F.3d 1035, 1042-43 (9th Cir. 1996)). Though CCMI may have "engaged in several rounds of written discovery and CCMI has defended five depositions based on the one-harasser theory," EEOC's new allegations relate to the same unlawful employment practice that has been at issue since the beginning of this lawsuit such that CCMI would not be required to "undertake[] . . . an entirely new course of defense." *Cf. Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). While additional discovery will likely be required following amendment, CCMI does not specify how such discovery would be unduly prejudicial. *Barraza v. C.R. Bard Inc.*, 322 F.R.D. 369, 391-92 (D. Ariz. 2017)

(declining to prejudice in the discovery process because the party opposing amendment did not specifically identify what "discovery they would have sought" or why such discovery would have been "relevant or necessary").  As such, CCMI has not shown undue prejudice that would justify denying EEOC's motion.

Second, and similarly, CCMI fails to show that EEOC's amendment would be futile. It argues that "the proposed amendment would be futile precisely because it improperly expands the scope of this litigation beyond the discrimination charge, the EEOC's determination, and the conciliation failure that gave rise to this litigation, all of which concerned only one alleged harasser." (Doc. 67 at 2).  But CCMI provides no relevant authority to support this argument.  (*Id.* at 11-12).

As discussed above, the additional allegations in the proposed Second Amended Complaint are related to the same unlawful employment practice already at issue, which squarely falls within the scope of Title VII.  (Doc. 65-1 at 21-26).  Moreover, "judicial relief" is not limited to those incidents listed in the original charge to the EEOC: it "may encompass any discrimination like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge" that relate to the same unlawful employment practice. *Oubichon v. N. Am. Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973); *Morgan*, 536 U.S. at 105, 122 (limiting this principle from *Oubichon* to hostile work environment claims).  When EEOC, rather than a private individual, sues an employer, "it acts . . . to vindicate the public interest in preventing employment discrimination," rather than simply acting "at the behest of and for the benefit of specific individuals." *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 326 (1980).  Indeed, "EEOC enforcement actions are not limited to the claims presented by the charging parties." *Id.* at 331.  As such, CCMI has not identified any reason that EEOC should not be allowed to amend its claim or any reason why doing so would be futile.

In sum, CCMI has not established any reason that the Court should deny EEOC's motion for leave to amend the Amended Complaint.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that EEOC's Motion for Leave to Amend (Doc. 65) is **GRANTED**.

**IT IS FURTHER ORDERED** that EEOC file its Second Amended Complaint as set forth in Exhibit 1 to its Motion (Doc. 65-1) in compliance with LRCiv 15.1(b) within seven (7) days of the filing of this order.

**IT IS FURTHER ORDERED** that the parties file a joint notice with the Court setting forth the past or existing deadlines impacted with the requested proposed deadlines within fourteen (14) days after service of the Second Amended Complaint.

Dated this 6th day of May, 2026.

_____
G. Murray Snow
Senior United States District Judge

- 12 -